# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In re:

*Cynthia Claire Chesler*,                    Case No. 18-43795

        Debtor.                    Chapter 7

---

## MEMORANDUM DECISION

---

At Minneapolis, Minnesota, October 25, 2019.

On August 7, 2019, the Court held a hearing on the chapter 7 trustee's Motion for Turnover, together with the debtor's response thereto. Mary Sieling appeared on behalf of the trustee, Nauni Jo Manty, and Thomas Olive appeared on behalf of the debtor. At the conclusion of the hearing, the Court invited the parties to file contemporaneous supplemental memoranda. Both parties timely filed their memoranda on August 21, 2019. The Court thereafter took this matter under advisement, and it is now ready for resolution.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (I) and the Court has jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B) and (I). This memorandum decision is based on all the information available to the Court and constitutes the Courts findings of fact and conclusions of law under Fed. R. Bankr. P. 7052, made applicable to this contested matter by Fed. R. Bankr. P. 9014(c).

For the reasons stated herein, the chapter 7 trustee's motion for turnover is **GRANTED**, and the debtor shall turn over $1,290.12, which is 93.15% of the debtor's 2018 Minnesota Homestead Credit Refund.

## BACKGROUND

The facts in this case are undisputed. The debtor owns and occupies a homestead in Saint Louis Park, Minnesota, with her non-filing spouse. The debtor owned and occupied this property throughout 2018 and continues to own and occupy the property. On December 7, 2018, the debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code. Shortly before filing, on November 26, 2018, the debtor paid her then-due property taxes to Hennepin County. In the Spring of 2019, the debtor filed a Homestead Credit Refund Return on Form M1PR, claiming a joint Homestead Credit Refund for herself and her husband in the amount of $2,770.00. The debtor expects to receive this Homestead Credit Refund in the fall of 2019. Half of the Homestead Credit Refund, or $1,385.00, is allocated to the debtor.

The trustee argues that 93.15 percent of the debtor's half of the Homestead Credit Refund – or $1,290.12 – is property of the bankruptcy estate. This number is based on a percentage of the 2018 calendar year on the date the debtor filed; in other words, December 7, 2018 was 93.15 percent of the way through 2018. As a result, the trustee asked the debtor to sign a stipulation stating that 93.15 percent of the debtor's portion of the Homestead Credit Refund is property of the estate.

The debtor disagrees with the trustee's assessment and argues that, although the debtor does not claim the Homestead Credit Refund as exempt property, the refund is not part of the bankruptcy estate. As such, the debtor refused to sign the trustee's stipulation. In response, the trustee filed this Motion for Turnover.

The issue here, then, is whether the Homestead Credit Refund is part of the bankruptcy estate.

2

# LAW

When a bankruptcy case is filed, a bankruptcy estate is formed.

> Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of this case.

11 U.S.C. § 541(a). Additionally, all property of the estate must be delivered to the trustee. 11 U.S.C. § 542(a). Courts – including the United States Supreme Court – have consistently found that § 541 should be interpreted broadly. In Segal v. Rochelle, the Supreme Court held, "[T]he term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because its enjoyment must be postponed." Segal v. Rochelle, 382 U.S. 375, 86 S.Ct. 511 (1966).

The question of whether property should be included in the bankruptcy estate is a question of law, and property interests are both created and defined by state law. In re Parsons, 280 F.3d 1185 (8th Cir. 2002); In re Smith, 402 B.R. 887 (B.A.P. 8th Cir. 2009). Courts have long found that an income tax refund can be property of a bankruptcy estate. Kokoszka v. Belford, 417 U.S. 642 (1974). See also In re Barowsky, 946 F.2d 1516 (10th Cir. 1991) ("Every court that has considered this issue has held that the portion of an income tax refund that is based upon the pre-petition portion of a taxable year constitutes property of the bankruptcy estate."). Courts have also consistently found that contingent interests in future payments are property of the estate. In re Law, 336 B.R. 780 (B.A.P. 8th Cir. 2006). Examples of these contingent interests include commissions and – of particular relevance here – tax credit refunds, such as the child tax credit. Parsons, 280 F.3d at 1185; Smith, 402 B.R. at 887; Law, 336 B.R. at 780.

3

The debtor in Parsons argued that real estate commissions she received after her bankruptcy filing for 15 pre-petition contracts did not belong to the bankruptcy estate, in part because "the post-petition services she rendered were indispensable to the closing of the subject real estate contracts." Parsons, 280 F.3d at 1187. Each of the 15 contracts at issue was signed before the bankruptcy filing, but all but two closed after the filing. Id. The Eighth Circuit applied Missouri law, which defined when a broker earns her commissions, and emphasized that although the debtor had completed some post-petition services relevant to the closings, none of the contract terms "were altered by post-petition events so as to alter her protectable interest in receiving the commissions." The court affirmed the B.A.P.'s conclusion that the commission payments were property of the bankruptcy estate. Id. at 1188. See also Smith, 402 B.R. at 887.

In Law, the 8th Circuit B.A.P. considered the child tax credit, noting that its purpose was "to give parents of dependent children a financial break," and that it was given to parents with an income below a certain threshold, based on a graduated scale for income amounts above that threshold – up to a maximum amount. Law, 336 B.R. at 780. The B.A.P. found that, for bankruptcy purposes, earned income tax credits and child tax credits were both contingent interests on a debtor's petition date – despite receiving different treatment under the tax code. Id. Therefore, the B.A.P. found that the tax credits become property of the bankruptcy estate. Id. Additionally, Law cited Williamson v. Jones (In re Montgomery), 224 F.3d 1193 (10th Cir. 2000), in which the court held, "In light of the consistent authority holding that section 541 applies to contingent interests, the fact that a debtor's interest in an [earned income tax credit] is not finalized until the end of the tax year is not an impediment to its inclusion in the bankruptcy estate." Montgomery, 224 F.3d at 1195. See also In re Johnston, 209 F.3d 611 (6th Cir. 2000). Although different courts have used different methods to calculate an appropriate portion of a tax

4

refund that belongs to the bankruptcy estate when a bankruptcy case is filed in the middle of a tax year, a common approach is to use a *pro rata* days method. In re Meyers, 616 F.3d 626 (7th Cir. 2010). See also In re Orndoff, 100 B.R. 516 (Bankr. E.D. Cal. 1989); In re DeVoe, 5 B.R. 618 (Bankr. S.D. Ohio 1980).

The Minnesota statute dealing with the Homestead Credit Refund is Minn. Stat. 290A.04. It states:

> **Subdivision 1: Refund.** A refund shall be allowed each claimant in the amount that property taxes payable [] exceed the percentage of the household income of the claimant specified in subdivision 2 or 2a in the year for which the taxes were levied . . .
>
> **Subd. 2. Homeowners; homestead credit refund.** A claimant whose property taxes payable are in excess of the percentage of the household income stated below shall pay an amount equal to the percent of income shown for the appropriate household income level along with the percent to be paid by the claimant of the remaining amount of property taxes payable. The state refund equals the amount of property taxes payable that remain, up to the state refund amount shown below.

Minn. Stat. 290A.04.

The Minnesota House Research Department, an entity that "provide[s] nonpartisan, neutral research and legal services to the Minnesota House of Representatives," describes the Minnesota Homestead Credit Refund program as "a state-paid refund that provides tax relief to homeowners whose property taxes are high relative to their incomes." Sean Williams and Jared Swanson, Homestead Credit Refund Program, Minnesota House Research Department: Property Taxes (March 2019), https://www.house.leg.state.mn.us/hrd/topics.aspx?topic=21). The amount of the Homestead Credit Refund is determined based on an income threshold, plus a graduated scale for income amount above that threshold – up to a maximum amount. Id. Additionally, Minnesota taxes are paid in arrears:

> The process of calculating, imposing, and collecting Minnesota property taxes for a year actually spans two full calendar years . . . the two-year cycle begins with the

5

> January 2 statutory assessment date and extends all the way through the next calendar year until the property taxes have been paid. For example, for taxes payable in 2015, the cycle begins on January 2, 2014, and doesn't end until the final payments are made in October/November 2015.

Steve Hinze and Andrew Biggerstaff, <u>Property Tax 101: Property Tax Administration</u>, Minnesota House Research Department: Short Subjects (September 2014), https://www.house.leg.state.mn.us/hrd/topics.aspx?topic=21.

In order to receive this year's Regular Homeowner's Homestead Credit Refund, the Minnesota Department of Revenue states that an individual must: (1) have a social security number, (2) own property classified as his or her homestead, (3) be current on property tax payments (or have made arrangements to pay them by August 15, 2020), (4) own and live in the home on January 2, 2019, and (5) have a household income of less than $113,150 *in 2018*. Minnesota Department of Revenue, <u>Homeowner's Homestead Credit Refund</u> (2018), https://www.revenue.state.mn.us/homeowners-homestead-credit-refund (emphasis added). The individual must apply for the refund using the M1PR form; that individual's Homestead Credit Refund is then calculated based on the income she earned in the previous year – in this case, income earned in 2018.

## ANALYSIS

As has already been discussed, the case law is clear that the pre-petition portion of a tax credit is property of the estate; so are contingent interests in future payments. The Court finds the established case law concerning real estate commissions and child tax credits very analogous to this case; therefore, the logic applied in those cases should be applied to this one.

The debtor relies heavily on the fact that to receive the Homestead Credit Refund, she was required to reside in her residence on January 2, 2019; she argues that this requirement means her interest in the refund was not contingent, like a real estate commission, but rather, that

6

her interest did not exist at all until she met the residency requirement. While this is a creative argument, the Court does not agree.

As was previously discussed, the debtor in Parsons argued – and the 8th Circuit B.A.P. did not disagree – that the post-petition services she rendered were "indispensable" to the closing of several real estate contracts. Parsons, 280 F.3d at 1187. However, because state law defined when the debtor's interest in the commission was created, and because that interest had already been created before the bankruptcy case was filed, the "indispensable" services that were rendered post-petition did not prevent the interest from becoming property of the estate under 11 U.S.C. § 541(a). Id.

Here, the Minnesota Statutes relating to the Homestead Credit Refund state simply that the refund is calculated based on the claimant's income for the entire year for which the taxes are levied – in this case, 2018. In addition, the information and representations on the record here show that, as of the debtor's date of filing, the debtor had completed four of the five requirements to receive the Homestead Credit Refund as mandated by the Minnesota Department of Revenue. The only requirement the debtor had not met was the requirement that she own and live in her home on January 2, 2019. It is undisputed that this requirement was completed 26 days after the debtor filed this case.

However, it was not only the debtor's residency on January 2, 2019, that qualified her for this Homestead Credit Refund. On the contrary: what qualified her for this Homestead Credit Refund was a combination of all five requirements – four of which were completed before she filed her bankruptcy case. Importantly, the debtor qualified because: (1) she had a social security number, (2) she lived in a home that she owned and that was classified as her homestead, (3) she was current on her taxes after she paid her property taxes due in the fall of

7

2018, and (4) her household income – 93.15 percent of which had been completed by the time she filed on December 7, 2018 – was less than the threshold amount for 2018.

Because the debtor had already met the requirements for these other factors, her residence in the home on January 2, 2019, merely "sealed" the proverbial "deal." Had the debtor not met the other four requirements, the fact that she resided in the home on January 2, 2019, would have been of no consequence.

This analysis is bolstered by the case law concerning the child tax credit. The purpose behind the child tax credit, along with the method of calculating how much claimants get for the credit, are very similar – and in some senses, identical – to the Homestead Credit Refund at issue here. As was noted above, case law has established many times over that these kinds of credits are considered contingent interests on a debtor's petition date – regardless of how they are characterized under the tax code. Many courts have also addressed the timing issue at hand here, and have reliably found that these kinds of credit refunds become property of the estate regardless of the fact that the claimant's/debtor's interest in them is not finalized until the end of the tax year. Further, the trustee's suggested *pro rata* calculation of the bankruptcy estate's interest in the tax credit follows the reasoning of many courts that have addressed this issue.

## CONCLUSION

Just as with a real estate sales commission or a child tax credit, the pre-petition portion of the Homestead Credit Refund at issue here is estate property. The fact that the debtor could not have received the Refund without residing in her home on January 2, 2019, means, simply, that her interest in the refund was *contingent* on the day she filed her bankruptcy case – not that the interest did not exist at all. Therefore, it is entirely proper for the tax credit refund to be included in the bankruptcy estate on a *pro rata* basis.

8

Accordingly,

**IT IS HEREBY ORDERED** that:

1. The chapter 7 trustee's motion for turnover is GRANTED.

2. The debtor shall turn over $1,290.12, which equates to 93.15 percent of her 2018 Minnesota Homestead Credit Refund, to the trustee within either: (a) five days of receiving said refund or, (b) if the refund has already been received by the debtor, within five days of the issuance of this order.

Dated: October 25, 2019

*/e/ Michael E. Ridgway*
Michael E. Ridgway
Chief United States Bankruptcy Judge

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *10/25/2019*
Lori Vosejpka, Clerk, by MJS